**COHELAN KHOURY & SINGER**
Timothy D. Cohelan, Esq., SBN 60827
Michael D. Singer, Esq., SBN 115301
Diana M. Khoury, Esq., SBN 128643
J. Jason Hill, Esq., SBN 179630
605 C Street, Suite 200
San Diego, CA 92101-5305
TEL: (619) 595-3001
FAX: (619) 595-3000

**GASTON & GASTON**
Frederick W. Gaston, Esq., SBN 231179
1010 2nd Avenue, Suite 1770
San Diego, CA, 92101
TEL: (619) 398-1882
FAX: (619) 398-1887

Attorneys for Plaintiff Andre Watson on behalf of
himself and all others similarly-situated

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WATSON, on behalf of himself and all others similarly-situated,<br><br>      Plaintiff,<br><br>      v.<br><br>RAYTHEON COMPANY and DOES 1 through 100, Inclusive,<br><br>      Defendant. | CASE NO. 10-cv-00634-LAB-RBB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL FAIRNESS HEARING**<br><br>**[UNOPPOSED]**<br><br>Date: November 8, 2010<br>Time: 11:15 a.m.<br>Courtroom: 9<br>Judge: Hon. Larry A. Burns<br><br>Complaint filed: May 29, 2008<br>Trial Date: None set |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION AND OVERVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II. PROCEDURAL AND LITIGATION HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. INVESTIGATION AND DISCOVERY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV. PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

V. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   A. Class Action Settlements are Subject to Court Review and Approval Under the Federal Rule of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   B. The Class Action is Certified . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   C. The Settlement Is Fair, Reasonable and Adequate . . . . . . . . . . . . . . . . . . . . . . .15

      1. The Amount of the Settlement is a Fair Compromise of Vigorously Contested, Factually Complex Claims, Subject to Many Legal Uncertainties . . . . . . . . .16

      2. The Extent of Investigation by the Parties Was, and Is, Sufficient to Allow Counsel, and this Court, to Support the Settlement . . . . . . . . . . . . . . . . . . . 20

      3. Plaintiff's and Defendant's Counsel are Experienced and Support the Settlement; and the Settlement is the Product of Serious, Informed, Non-collusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Aguiar v. Cintas Corp. No. 2*
(2006) 144 Cal. App. 4th 121. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Boyd v. Bechtel Corp.*
(N.D.Cal. 1979) 485 F.Supp. 610. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Dunbar v. Albertson's Inc.*
(2006) 141 Cal. App. 4th 1422. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dunk v. Ford Motor Co.*
(1996) 48 Cal.App.4th 1794. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ellis v. Naval Air Rework Facility*
(N.D.Cal. 1980) 87 F.R.D. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
(E.D.Pa. 1985) 630 F.Supp. 482. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Harris v. Superior Court*
(2007) 154 Cal. App. 4th 164. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hertz Corp v. Friend*
(2010) 2010 WL 605601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Beef Industry Antitrust Litigation*
(5th Cir. 1979) 607 F.2d 167. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*In re Omnivision Technologies, Inc.*
(N.D. Cal. 2007) 2007 U.S. Dist LEXIS 95616. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*
(1981) 452 U.S. 905. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Jamison v. Butcher & Sherrerd*
(E.D.Pa. 1975) 68 F.R.D. 479. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jenkins v. Commonwealth Land Title Ins. Co.*
(9th Cir. 1996) 95 F.3d 791. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Linney v. Cellular Alaska Partnership*
(9th Cir. 1998) 151 F. 3d 1234. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Officers for Justice v. Civil Serv. Comm'n*
(9th Cir. 1982) 688 F.2d 615, cert. den. (1983) 459 U.S. 1217. . . . . . . . . . . . . . . . . .15, 19

*Rebney v. Wells Fargo Bank*
    (1990) 220 Cal.App.3d1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Rodriguez v. West Publishing Corp.*
    (C.D. Ca. Sept. 10, 2007) 2007 U.S. Dist. LEXIS 74849 at 33 . . . . . . . . . . . . . . . . . . . .15

*Staton v. Boeing Co.*
    (9th Cir. 2003)327 F. 938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wershba v. Apple Computers, Inc.*
    (2001) 91 Cal.App.4th 224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## <u>STATUTES AND REGULATIONS</u>

<u>Page</u>

<u>California Business and Professions Code</u>
    § 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

<u>California Code of Civil Procedure</u>
    § 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

<u>California Labor Code</u>
    § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
    § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 515.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
    § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Federal Rules of Civil Procedure</u>
    Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>United States Code</u>
    Title 28, Section 1450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

- iii -

Memorandum Of Points & Authorities ISO Of Unopposed         Case No. 10-cv-00634-LAB (RBB)
Motion For Preliminary Approval Of Class Action Settlement

## I.    INTRODUCTION AND OVERVIEW

This motion is brought seeking preliminary approval of a certified wage and hour class action settlement by Plaintiff Andre Watson on behalf of himself and the Class consisting of an estimated 391 persons employed by Defendant Raytheon Company ("Raytheon") as Software Engineers I ("SE-01"), job code CE37, and Software Engineers II ("SE-02"), job code CE38, in California, at any time during the Class Period, May 29, 2004 through October 7, 2010 (date motion for preliminary approval is filed.)  Plaintiff contends these two software positions were salaried and misclassified as exempt from the requirements of overtime compensation resulting in numerous wage and hour violations and associated penalties, including non-payment of overtime compensation, the failure to provide meal and rest breaks or compensation in lieu thereof, the failure to pay all wages owed to terminated employees, and the failure to provide accurate itemized wage statements.

Defendant Raytheon Company ("Raytheon") is primarily a defense contractor whose business includes the development of weapons systems for the United States Department of Defense (www.raytheon.com).    The company, in part, develops and builds missile defense systems, avionics, and communications systems.   Plaintiff Andre Watson was employed by Raytheon from May 2005 until April 2008 as first an SE-01 employee, and later promoted to an SE-02 employee.  Plaintiff alleged that these Class positions were entry-level, with employees performing low-level, routine, repetitive and menial task work which did not include creative design or the development of software, which should not have been exempted from the requirement of paying overtime wages.  Plaintiff further alleged that these Class positions were created to allow the employee to learn to become proficient in computer software development with all work performed closely monitored and reviewed by supervisors.

Plaintiff further contended that Raytheon's role as a defense contractor required uniform

-1-

standards because its products are highly specialized, documented, and controlled. As a result, the company utilizes standardized protocols, policies, procedures and practices that to a great extent are equal to each of its primary business units operating in California. While the software produced by the business units varied in application, all software engineer employees' job duties revolved around the same general set of core functions within the "Software Development Life Cycle" ("SDLC"). This includes design, coding, testing, documentation, and implementation task work irrespective of whether the application relates to missile guidance programs or satellite navigation applications. Also, due to the rigid specifications of each application, by time tasks and duties assigned to SE01/02 employees, WATSON contended that many elements of creativity, originality, or high level theoretical application of computer science principles were watered-down and parceled out, leaving very little room for tasks other than routine review, repetitive testing, and virtually no design-level work for SE01/02 employees. Plaintiff contended that the SDLC comprised a uniform and finite set of tasks and duties which bound the Class together in performing similar work despite wide variations as to specific project objectives.

Upon review of the similarities in job functions for the SE01/02 employees, as well as the expectations of RAYTHEON shown by its exempt classification documentation, Class Counsel concluded that the covered positions were not predominantly engaged in the type of work activities and duties for which any recognized "exemption" from the requirement to pay overtime wages existed. Further, it appeared that the most appropriate proffered exemption, the "computer professional" exemption specifically created by the Legislature for software engineers did not apply to many of the class members due to California's Division of Labor Standards Enforcement ('DLSE') salary requirements. (See, California Labor Code § 515.5)

RAYTHEON vigorously contested Plaintiff's contentions, maintaining that the SE-01 and SE-02 employees were appropriately classified as exempt employees under several different

applicable exemptions, including the "learned professional" exemption. Raytheon deposed Plaintiff WATSON for three-days, and accumulated many declarations of Class Members that displayed both the SDLC duties, but also tended to show intricate variation by project. Plaintiff moved for class certification in November 2009 based primarily on RAYTHEON corporate witness testimony, internal human resource documents, and based on expert review by a former computer software engineer from Apple, Inc. RAYTHEON opposed the motion and lodged nearly 80 declarations from various Class Members and supervisors contesting certification. After extended argument, Superior Court Judge Steven R. Denton issued an order certifying the class on January 29, 2010, just prior to removal to this Court.

Defendant has and continues to deny all of the allegations in their entirety, has denied any liability or wrongdoing of any kind associated with Plaintiff's claims alleged in the complaint and continues to deny this action is appropriate for class treatment. Defendant contends, among other things, that it has complied at all times with the California Labor Code and all other applicable California law.

## II.    PROCEDURAL AND LITIGATION HISTORY

On May 29, 2008, Plaintiff filed a Complaint alleging that he and the Class were non-exempt employees covered under one or more of the Industrial Wage Commission Wages Orders, Labor Code Sections, regulations and statutes. The matter was filed in the Superior Court of California, County of San Diego. Plaintiff sought damages and restitution for unpaid overtime wages, (California Labor Code §1194), failure to provide rest and meal periods, or compensation in lieu thereof (Labor Code §§ 226.7, 512, and Industrial Wage Commission Wage Orders Nos. 4-2000, and 4-2001), failure to comply with the itemized wage statement provisions (Labor Code §226(a)), failure to pay all wages due on termination of employment (Labor Code §203), and based thereon, violations of Business & Professions Code §§ 17200, *et seq.* On or about July 7,

-3-

2008, Defendant answered the complaint. (Declaration of Timothy D. Cohelan, ("Cohelan Decl."), 8.)

On November 23, 2009, Plaintiff filed a First Amended Complaint adding a cause of action for violation of the Private Attorneys General Act of 2004 ("PAGA"), as permitted by Labor Code §§ 2698, *et seq*. (Cohelan Decl., 9.)

Also filed on November 23, 2009 was Plaintiff's Motion for Class Certification, to which Defendant filed its opposition on December 23, 2009. On January 8, 2010, Plaintiff filed his reply. The Motion for Class Certification was fully briefed and argued on January 15, 2010 and taken under submission. On January 29, 2010, the Hon. Steven R. Denton issued his order which certified the class positions of Software Engineer I ("SE-01") with designated job code CE37, and Software Engineer II ("SE-02") with designated job code CE38, for overtime, rest breaks and meal periods, inaccurate wage statements, failing to pay all wages when due, and based on those violations, Unfair Business Practices (Business & Professions Code section 17200), and the PAGA claim. (Cohelan Decl., 10, Exhibit "B" - Class Certification Order.)

On January 7, 2010, Defendant filed a Demurrer to the Sixth Cause of Action (PAGA claim) of the First Amended Complaint contending its addition was time-barred. On February 22, 2010, Plaintiff filed his opposition and the hearing, originally scheduled for March 5, 2010, was moved to April 23, 2010. (Cohelan Decl., 11.)

Before the Demurrer was heard, on March 24, 2010, Raytheon filed its Notice of Removal to the United States District Court for the Southern District, pursuant to the Class Action Fairness Act ("CAFA") and upon the Supreme Court's February 23, 2010 decision in *Hertz Corp v. Friend*, No. 08-1107, 2010 WL 605601 (2010), that clarified the law regarding the location of a corporate entity's principal place of business for purposes of determining domicile. (Cohelan Decl., 12.)

-4-

On March 30, 2010, the District Court issued a Notice and Order for an Early Neutral Evaluation ("ENE") Conference set for May 13, 2010. (Cohelan Decl., 13.)

On April 21, 2010, Plaintiff filed a Motion for Remand and a Request to file a Second Amended Complaint which was set for June 21, 2010. (Cohelan Decl., 14.) Raytheon filed its opposition on or about June 7, 2010. (*Id*.)

On Joint Application of the Parties, the ENE was continued to June 30, 2010 due to a scheduling conflict as well as to permit the Court time to consider Plaintiff's remand motion, which had been fully briefed. (Cohelan Decl., 15.)

On June 30, 2010, Plaintiff WATSON and Defendant RAYTHEON, with their counsel, attended the ENE before Magistrate Ruben B. Brooks. With Magistrate Brooks' assistance and tireless efforts, the Parties were able to mediate a settlement of the principal terms, with the balance of the settlement terms and details continuing to be negotiated at arms-length through the date the Stipulation and Settlement Agreement of Class Action Claims was signed by the Parties. (Cohelan Decl., 16.) In light of the proposed Settlement, Plaintiff contacted the clerk for the District Court and requested that any Order on Plaintiff's Motion for Remand be delayed as a Motion for Preliminary Approval would be filed following agreement on the settlement terms, which if preliminarily and then finally approved, would render the remand issue moot. (Cohelan Decl., 17.)

## III.    INVESTIGATION AND DISCOVERY

The Parties have conducted significant investigation of both the facts and law before and after the class action was filed. On June 20, 2008, Plaintiff served Defendant with his first round of written discovery which included General Form Interrogatories, Special Interrogatories, Request for Admissions and Requests for Production of Documents. (Cohelan Decl., 18.) On or about August 11, 2008, Defendant served its objections and responses. (*Id*.)

-5-

On August 20, 2008, Plaintiff served Defendant with Employment Form Interrogatories (set no. 1); Defendant served its objections and responses on or about September 24, 2008. (Cohelan Decl., 19.)

On September 23, 2008, following review of these objections and responses and with unsuccessful efforts to obtain the putative class members' contact information, Plaintiff filed a Motion to Compel Further Responses to Special Interrogatories, (Set No. 1), which hearing was set for November 14, 2008. (Cohelan Decl., 20.) After the motion was filed, however, the Parties continued to discuss Plaintiff's request for the putative classes' contact information. Those discussions led to an agreement to have a third-party neutral administrator mail a privacy notice to the then-estimated 427 member class on December 3, 2008. In response to the privacy notice, 86 class members requested their contact information be withheld from production and 16 privacy notices were returned as undeliverable. (*Id.*)

As for Defendant's responses to Plaintiff's other discovery requests, Plaintiff continued to attempt to resolve their differences by way of no less than five meet and confer letters. (Cohelan Decl., 21.) With failed efforts, on September 29, 2008 Plaintiff filed an Ex Parte Application Regarding Discovery set for hearing September 30, 2008. The Court issued motion hearing dates and Plaintiff prepared and filed his motions to compel. Ultimately, the motions were not heard and the Parties reached accord on many of the discovery issues. (*Id.*)

To those 323 class members who did not opt out of releasing their contact information, on January 29, 2009, Class Counsel mailed a two-page "Newsletter" providing background information on Plaintiff's class action and a request each contact Class Counsel to discuss their work experiences at Raytheon, specifically, their job duties and tasks as well as the hours worked per day/week in order to support Plaintiff's anticipated motion for class certification. (Cohelan Decl., 22.)

-6-

In response to Plaintiff's document production requests and pursuant to a stipulated protective order, Defendant produced over the course of a year's time beginning November 17, 2008, nearly 5,000 pages consisting of (1) Plaintiff's Personnel file, including performance summaries, promotion forms, evaluations, etc.; (2) job requisitions for the SE01/02 positions; (3) time sheets; (4) overtime policies; (5) portions of Defendant's Exempt Classification Guide for Professional/Individual Contributors; (6) numerous employee emails; (7) multiple company policy and procedure manuals; (8) multiple company training and logistics manuals; (9) Job Descriptions for the SE01/02 positions; and (10) various other documents. (Cohelan Decl., 23.)

On November 20, 2008, Plaintiff served a second set of Requests for Production of Documents to which Defendant provided responses/documents on January 20, 2009. Defendant thereafter served its supplemental responses to all of Plaintiff's discovery requests on September 2, 2009. (Cohelan Decl., 24.)

On November 17, 2008, Defendant served Plaintiff WATSON with Form and Special Interrogatories, Requests for Admissions and Requests for Production of Documents. On January 9, 2009, Plaintiff served his responses and an estimated 560 pages of documents; his supplemental responses were served on March 25, 2009. (Cohelan Decl., 25.)

Plaintiff ANDRE WATSON prepared for and gave three full days of deposition testimony, (an estimated 709 pages) on April 22, 2009, May 21, 2009, and May 29, 2009. (Cohelan Decl., 26.)

Furthermore, in anticipation of filing his class certification motion, Plaintiff noticed and took the depositions of Defendant's corporate representatives: (1) Thomas Bradley Moore, Defendant's Person Most Knowledgeable ("PMK") of Payroll of Raytheon Space and Airborne Systems on March 24, 2009; (2) David Maroney, Defendant's PMK Re: Exemption Status of Employees of Raytheon Space and Airborne Systems, on April 29, 2009; (3) Patricia Anne

-7-

Strickland, Defendant's PMK Re: Classification of Employees of Ids of Raytheon Space and Airborne Systems, on October 20, 2009; (4) Richard Scott Swisshelm, a Software Engineering Manager III, on October 21, 2009; (5) Kevin Paquin, Defendant's PMK of Network Centrix Systems, on October 27, 2009; (6) Stacey Allen, Defendant's PMK of Intelligence Information Systems, on October 28, 2009; and (7) Therese Boyle, Defendant's PMK of Space and Airborne Systems, on October 29, 2009. (Cohelan Decl., 27.)

In a second effort to reach out to the putative class on September 17, 2009, Class Counsel mailed a second "Newsletter" to 310 putative Class Members providing an update on the status of the case and requesting each contact Class Counsel to discuss their Raytheon work experiences. (Cohelan Decl., 28.)

Furthermore, Class Counsel attempted to telephonically contact over 300 class members to obtain anecdotal information for use in assessing the strengths and weaknesses of Plaintiff's case and to develop a damage model based upon the information obtained and extrapolated to the entire class. Through these phone calls, Class Counsel spoke with approximately 45 putative Class Members who provided valuable information corroborating information provided by Plaintiff and utilized in preparation of Plaintiff's motion for class certification. (Cohelan Decl., 29.) Class counsel also spoke to several former Raytheon supervisors (persons who oversaw SE-01/02 employees) to get their perspective on tasks and duties assigned. Several putative class members declined to speak with Class Counsel in fear of retaliation of losing their jobs as well as a belief that due to the national security aspects of their jobs, they were precluded from doing so. (Cohelan Decl., 30.)

Counsel for the Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims in the lawsuit and potential defenses thereto and the damages claimed by Plaintiff. (Cohelan Decl., 31.) Counsel for the Parties engaged in several

-8-

conferences with each other to discuss the duties and responsibilities of the class positions, among other things. (Cohelan Decl., 32.)

**IV.    PROPOSED SETTLEMENT**

Raytheon has vigorously contested and continues to contest any liability on the claims asserted in the complaint, even after Class Certification.  Although it believed (and continues to believe) that class certification is inappropriate, it nevertheless agreed to attempt resolution of the case at the time of the Early Neutral Evaluation Conference to avoid the expense, distraction and uncertainty of protracted litigation and trial.

On June 30, 2010, the Parties appeared for the scheduled ENE Conference before Magistrate Ruben B. Brooks.  As a result of Magistrate Brooks' extensive efforts and knowledge of the facts and law as well as the arms-length negotiations facilitated, the Parties reached agreement on the principal terms of the settlement.  (Cohelan Decl., 33.)  Thereafter, the Parties continued to negotiate, at arms-length, the balance of the terms described in the Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement"), which is attached as Exhibit A to the Cohelan Declaration. (Cohelan Decl., 34.)

Pursuant to the Settlement Agreement, the Parties have agreed (subject to and contingent upon the approval of this Court), that this action be settled and compromised for a non-reversionary total Maximum Settlement Amount ("MSA") of $2,000,000.00, which sum includes, subject to Court approval, (a) attorneys' fees in the sum of up to one-third of the MSA ($666,666.67) to compensate Class Counsel for all work already performed and all work remaining to be performed in documenting the settlement, administrating the settlement and securing Court approval;  (b) litigation costs of up to $35,000.00; (c) enhancement award to the Class Representative ANDREW WATSON in the sum of $35,000.00 in consideration of initiating and prosecuting this Class Action, serving as a Class Representative, work performed, risks

undertaken for the payment of attorneys' fees and costs in the event he had been unsuccessful in this matter, and as consideration for providing a general release of all known and unknown claims arising out of his employment; (d) claims administration expenses not to exceed $25,000.00, and (e) a payment in the sum of $20,000.00 to the Labor and Workforce Development Agency for all civil penalties under the California Labor Code's Private Attorney General Act of 2004, as amended, California Labor Code sections 2699, *et seq.* (Cohelan Decl., 35.)

After all Court-approved deductions, it is estimated that $1,218,333.34 (the "Net Settlement Amount" or "NSA") will be distributed to Class Members who participate in the Settlement. The Settlement further provides that all **261 Current** Raytheon employee Class Members will receive their Settlement Award *automatically without having to return a Claim Form,* while the estimated **131 Former** Raytheon employee Class Members, will be required to return a Claim Form on or before the Claims Period Deadline. The NSA will be paid entirely to these Class Members provided they do not request exclusion from the Settlement. Under no circumstances will any portion of the MSA revert to Raytheon. (Cohelan Decl., 36.)

Furthermore, the MSA will be divided and comprised of two Sub-funds, with each Sub-Fund responsible for its proportional share of the Court-approved deductions referenced above.[1] (Cohelan Decl., 37.)

The Parties agree the following MSA allocation is reasonable in light of the potentially stronger claims of those in lower level SE-01 position:

(a)    "SE-01 Sub-Fund" - $1,175,178.70. SE-01 Sub-Fund Class Members shall be Class Members who were employed at any time during the Class Period at the SE-01 level. The

---

[1] The Sub-Fund Net amounts may vary if the Court does not approve the requested amount for fees, enhancement award to the Class Representative, or the cost of claims administration is different than estimated.

Settlement Administrator shall add together all the SE-01 Sub-Fund Class Members' total Work Weeks worked during the Class Period to arrive at "SE-01 Sub-Fund Total Work Weeks" for SE-01 Sub-Fund Class Members. The Total Work Weeks are estimated to be 12,593 as of August 6, 2010. The Settlement Administrator shall then divide each SE-01 Sub-Fund Class Member's total Work Weeks worked by the SE-01 Sub-Fund Total Work Weeks, in order to determine a "Percentage Share" of the SE-01 Sub-Fund Total Work Weeks for each SE-01 Sub-Fund Class Member. Each Current Raytheon employee Class Member and all Former Raytheon employee Class Members who return a valid and timely Claim Form shall be entitled to receive a Settlement Award equal to his or her Percentage Share of the SE-01 Sub-Fund Total Work Weeks multiplied by the portion of SE-01 Sub-Fund remaining after payment of all Court-approved deductions. (Cohelan Decl., 38.)

(b) "SE-2 Sub-Fund" - $824,821.30. SE-02 Sub-Fund Class Members shall be Class Members who were employed at any time during the Class Period at the SE-02 level. The Settlement Administrator shall add together all the SE-02 Sub-Fund Class Members' total Work Weeks worked during the Class Period to arrive at "SE-02 Sub-Fund Total Work Weeks" for SE-02 Sub-Fund Class Members. The Total Work Weeks are estimated to be 30,268 as of August 6, 2010. The Settlement Administrator shall then divide each SE-02 Sub-Fund Class Member's total Work Weeks worked by the SE-02 Sub-Fund Total Work Weeks, in order to determine a "Percentage Share" of the SE-02 Sub-Fund Total Work Weeks for each SE-02 Sub-Fund Class Member. Each Current Class Member and all Former Class Members who return a valid and timely Claim Form shall be entitled to receive a Settlement Award equal to his or her Percentage Share of the SE-02 Sub-Fund Total Work Weeks multiplied by the portion of SE-02 Sub-Fund remaining after payment of all Court0approved deductions. (Cohelan Decl., 38.)

-11-

(c)     <u>Weekly Recovery Rates</u>.  Based upon the above-referenced Sub-Fund allocations and proportional deductions from each Sub-Fund for the Court-approved deductions, and to account for the potentially stronger claims of those employed in the lower position of SE-01, the distribution formula weighing in favor of the SE-01, the SE-01's will receive an estimated $56.86, less taxes, while SE-02's will receive an estimated $16.59, less taxes, for each week worked during the Class Period, and calculated as follows:

| Allocation of Settlement $2M | % of $2M | % Share of $781,666.67 Deductions | Net Sub-fund | Work Weeks (to 8/6/10) | Weekly Recovery Rate |
|---|---|---|---|---|---|
| SE-01:   $1,175,178.70 | 58.75 | $459,229.17 | $715,949.54 | 12,593 | $ 56.852 |
| SE-02:   $  824,821.30 | 41.25 | $322,437.50 | $502,383.80 | 30,268 | $ 16.597 |

(Cohelan Decl., 38.)

In exchange for the Settlement Award payment, all Class Members who have not returned a valid and timely request to be excluded, will release the claims alleged in the action relating to the mis-classification of their position as exempt from the requirements of overtime pay, the failure to provide rest and/or meal periods or to compensate in lieu thereof, failure to provide accurate itemized wage statements, failure to pay all wages upon termination of their employment, and based upon those violations, the unfair competition law claim.  (Cohelan Decl., 39.)

Rust Consulting, Inc., the Settlement Administrator selected by the Parties, will mail to each member of the class, the Notice of Class Action Settlement, Claim Form, and a preprinted, postage paid return envelope. (Cohelan Decl., 40, Exhibits A-1, A-2.)  The Notice of Class Action Settlement will advise the Class of their rights to participate in the settlement, (i.e. for those <u>Currently</u> employed, that an automatic Settlement Payment will be provided, and for those <u>Formerly</u> employed, that a valid and timely Claim Form must be returned to the Settlement

-12-

Administrator), to object to the settlement, or to request exclusion from the settlement, and the procedures and timing for doing so. (*Id*.)   The Notice will also advise that <u>Former</u> Raytheon employee Class Members will have 60 days from the initial mailing date to return a Claim Form, or to request exclusion and will be provided information as to the deadline date for objections to the settlement *(Id.)*

Moreover, fourteen (14) days before the expiration of the Claims Deadline, the Claims Administrator will mail a letter to each Former Raytheon employee Class Member who has not responded with the return of a Claim Form or a request to be excluded, to remind them of the deadline within which to submit their Claim Form, of the amount they may expect to receive if they participate, and the fact that the identity of participating Class Members will remain confidential and not be provided to Defendant unless necessary to resolve a challenge regarding the information upon which his/her share of the settlement would be calculated. (Cohelan Decl., 41, Exhibit A-5.)

The proposed Claim Form will be individualized and will identify each Class Member's dates of employment, their position and job level(s), the number of weeks worked in each job level during the Class Period, the estimated weekly recovery rate for each level, and the amount of money each may expect to receive should they participate in the Settlement. (Cohelan Decl., 42, Exhibit A-2.)

Class Counsel is convinced that the proposed settlement is in the best interest of the class based on the negotiations and a detailed knowledge of the issues present in this action.  The length and risks of trial and other normal perils of litigation that may have impacted the value of the claims were all weighed in reaching the proposed settlement.  In addition, the affirmative defenses asserted by Raytheon, the prospect of a potential adverse summary judgment ruling, the possibility of a reversal of class certification, as well as the difficulties of complex litigation, the

-13-

lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed Settlement. (Cohelan Decl., 43.)

## V. ARGUMENT

### A. Class Action Settlements are Subject to Court Review and Approval Under the Federal Rule of Civil Procedure.

*Rule 23(e) of the Federal Rule of Civil Procedure* provides that "[a] class action shall not be dismissed, settled, or compromised without the approval of the Court, and notice of the proposed dismissal, settlement or compromise shall be given as the Court directs." The Ninth Circuit has stated that in order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. *Id.* at *Rule 23(e)(1)(C)*; *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003).

### B. The Class Action Is Certified.

This case was removed to the district court following the Superior Court Order granting class certification. While the terminology is slightly different, California Rules of Court and Civil Code Section 382 are directly in line with Rule 23 prerequisites. Here, as the Certification Order shows, certification was deemed appropriate, superior and manageable based on the evidence submitted.[2] While RAYTHEON did not challenge the Order through any Writ proceedings in the State appellate courts, it did anticipate a motion to vacate the certification order and/or a motion for decertification in the district court had the matter not resolved. While the Parties can only speculate as to the result, such efforts would present a risk to the certified class of not being able to successfully obtain recovery.

---

[2] Upon removal, the District Court takes the case as it finds it. See, *Jenkins v. Commonwealth Land Title Ins. Co.* (9th Cir. 1996) 95 F.3d 791,795 and 28 U.S.C. Section 1450, stating all "orders and other proceedings had in (state court) action prior to its removal *shall remain in full force and effect* until dissolved or modified by the District Court." [Emphasis added.] See also, Rutter, Federal Civil Procedure Before Trial (2010) at 2:1016-2:1024.

-14-

**C.     The Settlement Is Fair, Reasonable and Adequate.**

Courts act within their discretion in approving settlements which are fair, not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Industry Antitrust Litigation*, 607 F. 2d 167, 179 (5th Cir. 1979) cert. denied; *Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*, 452 U.S. 905 (1981).  In deciding whether to approve a proposed class action settlement, the Court must find that a proposed settlement is "fair, adequate and reasonable." *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1801 (1996) (quoting *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983).)  The trial court considers all relevant factors, such as "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." (*Id.*)  Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection."  *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E. D. Pa. 1975).

In the Ninth Circuit, a court affords a *presumption of fairness* to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery to allow counsel to act and the Court to review their actions in an informed manner; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Rodriguez v. West Publishing Corp*., No. CV-05-3222 R(MCx) 2007 U.S. Dist. LEXIS 74849 at 33 (C.D. Ca. Sept. 10, 2007), *Dunk v. Ford Motor Co.*, 48 Cal. App.4th, 1794, 1801-1802 (1996).  In the case at bar, the proposed Settlement was the product of serious, informed, and non-collusive negotiations.  The Cohelan Declaration demonstrates 1) that the proposed settlement was the

-15-

product of serious, informed, and non-collusive negotiations, overseen by Magistrate Ruben B. Brooks, 2) that the certified class is represented by experienced counsel, and 3) that sufficient discovery and investigation such that Plaintiff and his counsel are able to make an informed recommendation about the proposed Settlement. The final factor, the number of objectors, is not determinable until the Notice of Class Action Settlement has been provided to the Class and they have had an opportunity to respond. Thus, the proposed settlement is entitled to the presumption that it is fair and in all other respects proper, and one that should be preliminary approved.

> **1. The Amount of the Settlement is a Fair Compromise of Vigorously Contested, Factually Complex Claims, Subject to Many Legal Uncertainties.**

Exempt status under California law is to be narrowly construed and applied only to those employees who plainly and unmistakably meet the requirements. Plaintiff believes the Class was properly certified in that the positions were entry-level, with employees performing low-level, routine, repetitive and menial task work which did not include creative design or the development of software. Although certification was granted, Plaintiff recognizes that it would require a considerable showing in order to ultimately prove the covered positions continue to fail to meet Defendant's proffered exemption at the time of the anticipated Motion for De-Certification. Yet, it is not inconceivable that even after a full and fair hearing of all favorable evidence against the proffered exemption, Plaintiff could still end up on the losing end of the equation. Similar risks are presented to Raytheon.

Class certification is always a matter of the trial court's sound discretion, and recent district court decisions have been unfavorable in the misclassification area, i.e. *Weigele v. FedEx Ground Package System, Inc.*, United States District Court, Southern District of California, Case No. 06CV 1330 JLS (POR), overtime case - reversal of class certification; *Vinole v. Countrywide Home Loans, Inc.*, United States District Court, Southern District of California, Case No.

07CV0127 DMS (Wmc), misclassification OT case - grant of motion to deny class certification; *Jimenez v. Domino's Pizza, LLC*, United States District Court, Central District of California, Case No. SACV04-1107 JVS (Rcx), misclassification OT - denial of class certification.

Raytheon has strongly disputed liability and believes that class certification was inappropriate. There are significant legal uncertainties associated with mis-classification claims and in cases such as this one, such claims can be factually complex and require protracted litigation to resolve. Raytheon has maintained that resolution of these issues required individualized analysis of the nature of the class members' work, job duties and responsibilities, because the Company's practices and procedures varied by location, supervisor, job, and employee. Therefore, Raytheon has maintained that because individual issues would predominate over common facts that certification is inappropriate. Plaintiff would be likely facing the prospect of opposing a motion to vacate the certification order and/or a de-certification motion absent the proposed Settlement.

Furthermore, legal uncertainties also abound, with several published conflicting decisions in wage and hour cases. (See, e.g., *Harris v. Superior Court*, 154 Cal. App. 4th 164 (reversing decertification of class claiming misclassification and ordering summary adjudication in favor of employees), review granted, 171 P.3d 545 (2007) (not cited as precedent, but rather for illustrative purposes only); *Walsh v. IKON Solutions, Inc.*, 148 Cal. App. 4th 1440 (2007) (affirming decertification of class claiming misclassification); *Aguiar v. Cintas Corp.* No. 2, 144 Cal. App. 4th 121 (2006) (reversing denial of certification); *Dunbar v. Albertson's Inc.*, 141 Cal. App. 4th 1422 (2006) (affirming denial of certification.) These uncertainties bore heavily on the negotiations leading to the Settlement now before the Court for preliminary approval.

Based on the information provided by RAYTHEON at the time of the ENE, as well as the additional information provided through formal discovery, Class Counsel was permitted to

-17-

develop a damage model based on the alleged claims and size of the class for the covered period. The primary claim developed for overtime, however, the company's role as a government contractor along with the "extended work time" payment policy tended to offset any considerable outside overtime exposure. Anecdotally, the employees would not necessarily be subjected to routine and extensive overtime hours. Overtime ("OT") estimates by class members varied and many did indicate that the extended work period pre-approval at an employee's standard hourly rate helped to compensate for long hours during critical time periods for projects or "milestones." Plaintiff's counsel estimated that without factoring in the extended work time credit, three (3) hours of OT was an appropriate weekly average at an OT rate of approximately $45 per hour. Without the extended work hour offset or credit, the outside exposure contemplated by Plaintiff on the OT claim (assuming a favorable outcome from a class-wide trial) was estimated at just over $5,700,000. (Cohelan Decl., 44.) Plaintiff estimates that once the credit for amounts RAYTHEON paid for the extended pre-approved work time policy were factored in, the exposure, assuming all went well at a trial, was in the neighborhood of $4,600,000. (Cohelan Decl., 45.)

Further, employees generally were free to take breaks and meal periods - with the exception of certain project milestone deadlines. Thus, the evaluation of this claim was limited to essentially one (1) violation per employee per workweek at $30 per hour premium pay rate, which yielded a Meal/Rest period claim evaluation in the neighborhood of $1,275,000 – again assuming no issue with class-wide proof and manageability issues, not to mention the uncertainty relating a pending decision of the California Supreme Court (*Brinker Restaurant Corp. v. Superior Court (Hohnbaum),* California Supreme Court Case No. S166350). (Cohelan Decl., 46.)

In the face of these uncertainties, the Parties agreed to a compromise settlement, of a non-reversionary $2,000,000.00. Upon final approval, the NSA will be distributed to the 391

-18-

members of the class, paying SE-01 Class Members an estimated **$56.85** for each week and SE-02 Class Members an estimated **$16.59** for each week worked during the Class Period. (Cohelan Decl., 47.) If an SE-01 Class Member worked the entire Class Period, he or she stands to receive an estimated **$18,687.16**, while the SE-02 Class Member stands to receive an estimated **$5,453.30**. Plaintiff and Class Counsel believe this sum reflects an excellent recovery for the Settlement Class. *(Id.)* The weighting of workweeks toward the SE-01 employees reflect the realities that these employees generally were lower level but did obtain much greater proficiency as the salary grade increases from a level SE-01 software engineer to a level SE-02. It is also apparent that SE-02 employees, by and large, had obtained degrees beyond a bachelor's which, in turn, makes the defense for exempt status much more viable. (Cohelan Decl., 48.)

A settlement is not judged solely against what might have been recovered had plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. (*Wershba v. Apple Computers, Inc*. (2001) 91 Cal.App.4th 224, 246, 250, *Linney v. Cellular Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998); *Rebney v. Wells Fargo Bank*, 220 Cal.App.3d 1117, 1139 (1990) ["Compromise is inherent and necessary in the settlement process...even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation"]; *Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) 688 F.2d 615, 628 ["It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair"]; see, also, *In re Omnivision Technologies, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist LEXIS 95616, at p. 21, noting that certainty of recovery in settlement of 6% of maximum potential recovery after reduction for attorney's fees was higher than median percentage for

recoveries in shareholder class action settlements, averaging 2.2%-3% from 2002 through 2006.)

In light of the uncertainties of protracted litigation and the mixed legal precedent regarding the legal positions of the Parties, the $2,000,000.00 non-reversionary settlement reflects an excellent result for the Class. Indeed, the policy under California law in favor of settlement in class actions and other complex cases applies with particular force in this case. Certainty of recovery is enhanced by an equitable and timely consummated settlement such as that under consideration in this case. Tensions created in the employment relationship in the litigation process are alleviated by such settlements as opposed to a trial of the matter, and all Parties are in a better position to move forward with their roles in the economy. The expense of protracted litigation in these cases is formidable and the downside of loss to one side or the other is very great.

> **2.** **The Extent of Investigation by the Parties Was, and Is, Sufficient to Allow Counsel, and this Court, to Support the Settlement.**

The discovery and investigation were extensive as detailed above and sufficient to permit the Court to grant class certification status. In addition, Class Counsel was able to assess the extent of overtime worked by the Class and estimated meal and rest breaks not taken in accordance with the California Labor Code and Industrial Welfare Commission Orders for nonexempt employees to formulate a damage analysis for use at the ENE. As part of ongoing behind the scenes efforts to seek mediation, and as part of a battle over whether CAFA jurisdiction existed, Raytheon provided workweek and salary data to allow for damage calculations. (Cohelan Decl., 49.) The only missing element was the amount of credit afforded to Raytheon for its policy of paying an occasional 1.0 hour extended work credit to the class for special projects. (*Id.*) Finally at the ENE with Magistrate Judge Brooks, Defendant provided this missing piece of data in order for Plaintiffs to assess available damages and Raytheon's offset credit for the extended work time hours paid to SE01/02 employees. (*Id.*)

-20-

Before arriving at the proposed agreed-upon settlement, the Parties thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in extensive investigation, research, and formal discovery. (Cohelan Decl., 50.) Class Counsel also conducted informal interviews of other material witnesses, conducted other forms of investigation during the prosecution of this case, analyzed the potential class-wide damages, and researched the applicable law with respect to the claims asserted in the Complaint and Defendant's affirmative defenses and other potential defenses in order to assess the merits, ability to maintain certification of the class claims, and to formulate a damage model for settlement purposes. Thus, the Settlement before the Court came only after the case was fully investigated by counsel. This litigation, therefore, has reached the stage where "the Parties certainly have a clear view of the strengths and weaknesses of their cases" sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

> **3.** **Plaintiff's and Defendant's Counsel are Experienced and Support the Settlement; and the Settlement is the Product of Serious, Informed, Non-collusive Negotiations.**

Plaintiff's counsel have had significant experience in litigating mis-classification, overtime, expense reimbursement, and failed rest/meal period cases. Cohelan Khoury & Singer have certified several such class action cases in Orange County Superior Court, (before the Hon. David C. Velasquez, and the Hon. Jonathan Cannon), in the United States District Court for the Southern District of California, (before the Hon. Judge Marilyn Huff), and in San Diego County Superior Court (before the Hon. Linda B. Quinn, the Hon. Steven R. Denton, and the Hon. Timothy Taylor). (Cohelan Decl., 3, 4, 51.)

Experienced counsel, operating at arm's length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed settlement. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding

-21-

whether to approve the settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F. Supp. 482, 488, (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd. 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp., supra*, 485 F. Supp. at 616-17.

Both Plaintiff's and Defendant's counsel are particularly experienced in wage and hour employment law and class actions. (Cohelan Decl., 52; See, Declaration of Merrill F. Storms, Jr., in support of Raytheon's Opposition to Plaintiff's Remand filed June 7, 2010, paragraph 4.) Counsel are experienced and qualified to evaluate the Class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. (Cohelan Decl., 53.) Counsel on both sides share the view that this is a fair and reasonable settlement in light of the complexities of the case, the state of the law and uncertainties of class certification and litigation, and a fair result for the Class Members. Given the risks inherent in litigation and the defenses asserted, this settlement is fair, adequate, and reasonable and in the best interests of the class. (Cohelan Decl., 54.)

## VI. CONCLUSION

Plaintiff respectfully submits that the proposed settlement is fair, adequate, and reasonable, and that it is in the best interests of the Plaintiff and the Class. Under the applicable class action criteria and guidelines, the proposed settlement should be preliminarily approved by The Court at this time, the Notice of Class Action Settlement be approved, and that a final fairness hearing date be set.

Respectfully submitted,
COHELAN KHOURY & SINGER

Dated: October 7, 2010          By:/s/ Diana M. Khoury
                                               Diana M. Khoury
                                               J. Jason Hill
                                               Counsel for Plaintiff Andre Watson
                                               and the Certified Class